UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MARIAN HAMPRECHT

    Petitioner,

v.                                          Case No.  2:12-cv-125-FtM-29DNF

STEPHANIE HAMPRECHT              DISPOSITIVE MOTION

    Respondent.
_____/

**RESPONDENT'S MOTION TO DISMISS PETITIONER'S
VERIFIED PETITION FOR RETURN OF CHILD TO PETITIONER
WITH INCORPORATED MEMORANDUM OF LAW**

Respondent, Stephanie Hamprecht, by her undersigned attorneys, pursuant to Federal Rule of Civil Procedure 12(b)(6) files this Motion to Dismiss Petitioner's Verified Petition for Return of Child to Petitioner with Incorporated Memorandum of Law because the Petition for Return fails to state a claim upon which relief may be granted. For the reasons set forth herein, Petitioner's Petition for Return must be dismissed.

                                  **I.    INTRODUCTION**

On March 5, 2012 the Petitioner, Marian Hamprecht (the "Father") filed a Verified Petition for Return of Child to Petitioner pursuant to The Convention on the Civil Aspects of International Child Abduction, done at the Hague on October 25, 1980 (the "Hague Convention" or "Convention"), incorrectly alleging that the Respondent, Stephanie Hamprecht (the "Mother") is wrongfully retaining the parties' youngest son, F.H., in Florida from Germany.  On March 5, 2012, this Court issued an Order requiring the Mother to respond to the Petition within twenty (20) days of service of the Petition.

The Father cannot establish an essential element of his claim for return because he admits in

a sworn pleading in the related state court case that *he filed* that the Child's habitual residence is Florida. An essential element of the Father's claim of wrongful retention is that the habitual residence of the child immediately before the date of the alleged wrongful retention was Germany. *See*, Hague Convention, Art. 3; *Ruiz v. Tenorio*, 392 F.3d 1247, 1251 (11th Cir. 2004). By admitting under oath that the Child has resided in Florida since 2009, the Father necessarily admits that Florida is the Child's habitual residence.

The Petition for Return in this case is a misguided misuse of the Convention. It is an attempt at forum shopping by the Father, who now wants to avoid participation in the divorce and custody litigation between the parties in Florida – litigation he himself initiated in the forum he himself chose – and instead litigate custody in Germany, a court he deems more favorable. This behavior by the Petitioner is exactly the mischief the Hague Convention was designed to prevent. The Petitioner has not and cannot state a claim for return of the child to Germany that is plausible on its face and the Petition for Return must therefore be dismissed.

## II.   FACTS

The parties are the parents of F.H., age six. (Petition at ¶¶ 4, 5). The parties and F.H. moved from Germany to Fort Myers, Florida in February 2009. (Petition at ¶ 9). The parties' marital relationship deteriorated and on October 20, 2011, the Father filed a Petition for Dissolution of Marriage, Partition and Other Relief in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida (the "Florida state court"). (Petition at ¶ 12).

In his Petition for Return filed in this Court, the Father referenced but did not attach a copy[1] of his Petition for Dissolution of Marriage. (Petition at ¶ 12). A copy is attached hereto as **Exhibit A** and incorporated herein. In his Petition for Dissolution of Marriage, the Father

---

[1] As fully set forth in Section III B below, Respondent requests that this Court take judicial notice of the Petitioner's Petition for Dissolution of Marriage filed in the Florida state court.

expressly averred that "[b]oth parties have been residents of the State of Florida for more than six months next before filing this petition." (Ex. A at ¶ 2). The Father also alleged in his Petition for Dissolution of Marriage that the parties' children had "resided" in Florida since February 2009. (Ex. A at ¶ 7). In addition to dissolution of marriage and partition of property, the Father requested in his Petition for Dissolution of Marriage that the Florida Court make a determination with respect to parental responsibility and parenting time for the children pursuant to Florida Statute 61.13. (Ex. A at ¶ 8). He also requested that child support be established in accordance with Florida Statute 61.13. (Ex. A at ¶ 9).

In response to the Father's Petition for Dissolution of Marriage, the Mother filed a counter-petition. (Petition at ¶ 13). The Father later withdrew his Petition for Dissolution of Marriage, but the divorce, custody and property division proceedings are still pending[2] and proceeding in the Florida state court on the Mother's counter-petition. (Petition at ¶ 13).

In November 2011, only one month after initiating dissolution and custody proceedings in Florida and thereby consenting to the Florida state court's jurisdiction over the issue of custody of the child, the Father "relinquished" his United States visa (which was valid until at least January 2013) and left Florida for Germany with the parties' two older children (who are not the subject of this return proceeding). (Petition at ¶¶ 11, 14). The Father left the parties' youngest child, F.H., at home in Florida with the Mother (Petition at ¶¶ 11, 14).

The dissolution and custody proceedings continued to proceed in the Florida state court, with the Father's full participation. (Petition at ¶ 13). Clearly dissatisfied with the course of the Florida state court proceedings, the Father then filed his Petition for Return in this Court on

---

[2] The Florida state court proceedings were temporarily stayed by agreement of the parties pursuant to Article 16 of the Hague Convention pending the outcome of this case. The Florida state court proceedings have not been dismissed – they are only temporarily stayed. A copy of the Florida state court's Order staying the proceedings is attached hereto as **Exhibit B** and incorporated herein.

March 5, 2012, improperly alleging that the Mother has wrongfully retained the child in Florida. (Petition ¶¶ 1-24).

### III. LEGAL ARGUMENT

**A. THIS COURT SHOULD TAKE JUDICIAL NOTICE OF THE FATHER'S PETITION FOR DISSOLUTION OF MARRIAGE AND FACTS STATED THEREIN.**

When ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, a court may consider "the complaint, the written instruments attached to it as exhibits, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Brandt v. Depuy Orthopaedics, Inc.*, 2010 WL 2612037, 1 (M.D. Fla. 2010) (emphasis added), *citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007); *GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir.1993).

Here, this Court can and should take judicial notice of the Father's Petition for Dissolution of Marriage, Partition and Other Relief filed in the Circuit Court of the Twentieth Judicial Circuit in and for Lee County, Florida. The Father referenced his Petition for Dissolution of Marriage in his Petition for Return filed in this Court. Conspicuously missing as an exhibit to the Petition for Return is a copy of the Petition for Dissolution of Marriage. (Petition at ¶ 12). The Court may reasonably draw the inference from the omission that the Father did not attach the Petition for Dissolution of Marriage as an exhibit to his Petition for Return in this Court because in the Petition for Dissolution of Marriage the Father completely contradicts his claims with respect to habitual residence made in the Petition for Return filed in this Court.

Federal Rule of Evidence 201(b) provides that "[t]he court may judicially-notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's

jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." F.R.E. 201(b). "The court: (1) may take judicial notice on its own; or (2) must take judicial notice if a party requests it and the court is supplied with the necessary information." F.R.E. 201(c). The court may "take judicial notice at any stage of the proceeding." F.R.E. 201(d).

The Mother therefore requests that this Court take judicial notice of the Father's Petition for Dissolution of Marriage filed in the Florida state court. A copy of the Petition for Dissolution of Marriage has been supplied to the Court as Exhibit A to this Motion. Specifically, the Mother requests that this Court take judicial notice of the facts alleged by the Father in the Petition for Dissolution of Marriage that "[b]oth parties have been residents of the State of Florida for more than six months next before filing this petition" (Ex. A at ¶ 2) and that the parties' children had "resided" in Florida since February 2009. (Ex. A at ¶ 7). The importance of these facts, as they relate to judicial estoppel and the plausibility of the Petitioner's claims is fully explained in Section III C below.

The facts that the Mother requests this Court to judicially-notice are not subject to reasonable dispute because they can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned – the Father's own state court pleadings signed and filed under oath. The Father cannot dispute the facts the Mother seeks to be judicially-noticed because he is the party who alleged the facts under oath.

This Court therefore must take judicial notice of the Petition for Dissolution of Marriage and the averments contained therein because a party (the Mother) has requested the court to take judicial notice of the Petition for Dissolution, has provided the Court with the necessary

5

information, and the facts sought to be judicially-noticed can be readily determined from sources whose accuracy cannot be reasonably questioned.

This Court must take judicial notice of the Petition for Dissolution and therefore is permitted to and should consider the Petition for Dissolution of Marriage when ruling on this motion to dismiss for failure to state a claim upon which relief can be granted.

B.      **STANDARD FOR GRANING A MOTION TO DISMISS.**

A motion to dismiss for failure to state a claim upon which relief can be granted tests the formal sufficiency of the plaintiff's statement of its claim for relief in its complaint. To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007).

In determining the merits of a motion to dismiss for failure to state a claim, the court must "accept all factual allegations in the complaint as true." *Brandt v. Depuy Orthopaedics, Inc.*, 2010 WL 2612037, 1 (M.D. Fla. 2010) (emphasis added), *citing Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007).

However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Brandt*, 2010 WL 2612037 at 1, *quoting Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009).

"Once a court 'identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth,' the court must next determine whether the well-pled facts 'state a claim to relief that is plausible on its face.'" *Id*. A plaintiff's claim can only be considered to have facial plausibility when the plaintiff pleads "factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Brandt*, 2010 WL 2612037 at 1, citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544.

"Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. The standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. " . . .[W]hen a court considers the range of possible interpretations of the defendant's alleged conduct, if the 'more likely explanations' involve lawful, non-actionable behavior, the court should find that the plaintiff's claim is not plausible." *Id*.

Here, when the Court draws on its judicial experience and common sense and considers the range of possible interpretations of the Mother's alleged conduct, particularly when read in conjunction with the Father's own sworn statements in his Petition for Dissolution of Marriage, the Court should find that the Father's claim is not plausible. The Mother explains in detail in Section III C that the Father's allegations are insufficient and cannot rise to a right to relief above the speculative level or state a claim to relief that is plausible on its face.

C. **THE FATHER'S ADMISSION UNDER OATH IN HIS STATE COURT PLEADING THAT THE CHILD IS A RESIDENT OF FLORIDA IS DISPOSTIVE OF THE ISSUE OF THE CHILD'S HABITUAL RESIDENCE FOR PURPOSES OF HIS PETITION FOR RETURN IN THIS COURT.**

In the Eleventh Circuit, a child's "habitual residence" is, as we will explain, that place where the child is present and where the parents have a settled intention for the child to remain. "Residency" in a Florida dissolution of marriage proceeding is defined as actual presence coupled with an intention to make Florida the residence. Because the Father admitted in his state court sworn pleading that the parties' children had "resided" in Florida since February 2009, he admitted in that pleading that the Child's habitual residence is Florida.

7

In order to establish a prima facie case of wrongful retention under the Convention and ICARA, the Father must show by a preponderance of the evidence that: (1) the habitual residence of the child immediately before the date of the alleged wrongful retention was Germany; (2) the alleged retention breached the Father's custody rights under the law of the habitual residence; and (3) the Petitioner was exercising custody rights at the time of the alleged retention. *See*, Hague Convention, Art. 3; *Ruiz v. Tenorio*, 392 F.3d 1247, 1251 (11th Cir. 2004); *Lops v. Lops*, 140 F.3d 927, 936 (11th Cir. 1998) (citing ICARA § 11603(e)(1)(A)); *Sewald v. Reisinger*, Slip Copy 2009 WL 150856, 1 (M.D. Fla. 2009); *Bocquet v. Ouzid*, 225 F. Supp. 2d 1337, 1340 (S.D. Fla. 2002); *Pesin v. Osorio Rodriguez*, 77 F.Supp.2d 1277, 1284 (S.D. Fla. 1999), *aff'd*, 244 F.3d 1250, 1253 (11th Cir. 2001).

The interpretation of "habitual residence" is vitally important to the Convention because it will dictate the arbiter of the custody dispute. *Sewald*, 2009 WL 150856, 1. It is the "central – often outcome-determinative – concept on which the entire [Hague Convention] legal system is founded." *Mozes v. Mozes*, 239 F.3d 1067, 1072 (9th Cir. 2001). It is the threshold issue that must be established in order for a court to order a child's return under the Convention. Here, the Father has not and cannot plausibly plead that the child's habitual residence is Germany.

Although the Convention itself does not define "habitual residence," courts in both the United States and foreign jurisdictions have defined and explained habitual residence as a child's ordinary residence. Among the Federal Circuits, there are two approaches used to determine a child's habitual residence. In *Ruiz v. Tenorio*, 392 F.3d 1247, 1251 (11th Cir. 2004), the Eleventh Circuit adopted the Ninth Circuit's approach to analyzing habitual residence explained by the Ninth Circuit in *Mozes v. Mozes* 239 F.3d 1067, 1072 (9th Cir. 2001). The Ninth Circuit's

analysis is focused on determining the parents' "shared intent" or "settled intent" with respect to the habitual residence of a child. *Mozes*, 239 F.3d at 1072.

In *Ruiz*, the Eleventh Circuit set forth the analytical framework for determining habitual residence to be used in this Circuit. *Sewald*, 2009 WL 150856, 1. The *Ruiz* court explained that "[t]he first step toward acquiring a new habitual residence is forming a settled intention to abandon the one left behind." *Ruiz*, 392 F.3d at 1252 (citing *Mozes*, 239 F.3d at 1075). "[W]hen an alleged abandonment of a clearly established habitual residence for a new home is at issue, the court must determine not only whether the child was settled in his new home, but whether the prior habitual residence was abandoned, and the new home has supplanted the old as the locus of the [child's] family and social development." *Sewald*, 2009 WL 150856, 1. (quoting *Small v. Clark,* No. 5:06-CV-125-OC10GRJ, 2006 WL 2024955, 4). The settled intention to remain in the new habitual residence can develop at any time. *Sewald*, 2009 WL 150856, 1 (citing *Ruiz*, 239 F.3d at 1252; *Mozes*, 239 F.3d at 1075). The Eleventh Circuit emphasized that the determination of this "subjective" settled intent is important "because there can be no bright line rule with respect to the length of an absence." *Sewald*, 2009 WL 150856, 1 (citing *Ruiz*, 239 F.3d at 1253; *Mozes*, 239 F.3d at 1075). "All that is necessary is that the purpose of living where one does has a sufficient degree of continuity to be properly described as settled." *Sewald*, 2009 WL 150856, 1 (quoting *Ruiz*, 239 F.3d at 1253; *Mozes*, 239 F.3d at 1075).

In determining the settled intent of a child, courts must look to the "the settled purpose and shared intent of the child's parents in choosing a particular habitual residence." *Sewald*, 2009 WL 150856, 1 (quoting *Ruiz*, 239 F.3d at 1253).

The *Mozes* Court (whose opinion the Eleventh Circuit largely adopted in *Ruiz*) further explained that "the first step toward acquiring a new habitual residence is forming a settled

intention to abandon the one left behind. The intention or purpose which has to be taken into account is that of the person or persons entitled to fix the place of the child's residence." *Mozes*, 239 F.3d at 1075

In applying the *Mozes* and *Ruiz* analysis to the facts of this case as pled in the Petition for Return, read in conjunction with the Petition for Dissolution of Marriage, the Father has not and cannot plausibly plead that Germany is the child's habitual residence. In his sworn-under-oath Petition for Dissolution of Marriage, the Father expressly avers that the parties and children are habitually resident in Florida. In the Petition for Dissolution, the Father alleged that "[b]oth parties have been residents of the State of Florida for more than six months next before filing this petition." (Ex. A at ¶ 2). He further alleged that the parties' children had "resided" in Florida since February 2009. (Ex. A at ¶ 7). It is beyond cavil that "residency" in dissolution of marriage proceedings in Florida is defined under Florida law as "an actual presence in Florida coupled with an intention at that time to make Florida the residence." *Rowland v. Rowland*, 868 So. 2d 608, 609 (2004).

The Father has expressly averred under oath in his Petition for Dissolution of Marriage that the parties were residents of the State of Florida, which has the legal meaning that the parties were physically present in Florida and that both parties had the intent to make Florida their residence. The Father has therefore himself expressly averred under oath that the parties had a shared, settled intent to remain in Florida, which means that only Florida, not Germany, is the child's habitual residence. The Father's sworn admission in the Florida state court is dispositive of the issue here of the child's habitual residence, which is Florida, and this inescapable conclusion undermines an essential element of his petition for return.

In addition to being a dispositive admission, the Father's state court averment of Florida residency judicially estops him from asserting an inconsistent position in this proceeding. The Eleventh Circuit has clearly explained that the concept of judicial estoppel exists for the purpose of preventing exactly the type of contrary pleading attempted by the Father in this case.

Judicial estoppel precludes a party from "asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding. Judicial estoppel is an equitable concept intended to prevent the perversion of the judicial process." *Burnes v. Pemco Aeroplex, Inc.*, 291 F.3d 1282, 1285 (11th Cir. 2002) (quoting 18 James W. Moore et. Al., Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) (internal quotations omitted).

The purpose of the doctrine of judicial estoppel "is to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *Burnes*, 291 F.3d at 1285 (citing *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001). Judicial estoppel should be applied to prevent the "calculated assertion of divergent sworn positions. The doctrine is designed to prevent parties from making a mockery of justice by inconsistent pleadings" and "to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *Burnes*, 291 F.3d at 1285 (citing *American Nat'l Bank of Jacksonville v. Federal Dep. Ins. Corp.* 710 F.2d 1528, 1536 (11th Cir. 1983); *In re Costal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

Here, the Father is making a mockery of justice and playing fast and loose with the courts to suit his own self-interest through his inconsistent pleadings. When it suited his own interest to file for dissolution of marriage in Florida, the Father expressly averred in his Petition for Dissolution of Marriage that "[b]oth parties have been residents of the State of Florida for more than six months next before filing this petition" (Ex. A at ¶ 2) and that the parties' children had

"resided" in Florida since February 2009. (Ex. A at ¶ 7). Now that it suits the Father's own self-interest in this case to claim that the Child's habitual residence is Germany rather than Florida, he has made that contrary claim in his Petition for Return.

This Court should therefore prevent this mockery and self-interested pleading by finding that the Father is judicially estopped from claiming that the Child's habitual residence is anything other than Florida, as averred under oath in his Petition for Dissolution of Marriage.

In the Eleventh Circuit, courts consider two factors in the application of judicial estoppel to a particular case. *Burnes*, 291 F.3d at 1285 (citing *Salomon v. Smith Barney, Inc. v. Harvey, M.D.*, 260 F.3d 1302, 1308 (11th Cir. 2001). "First, it must be shown that the allegedly inconsistent positions were made under oath in a prior proceeding. Second, such inconsistencies must be shown to have been calculated to make a mockery of the judicial system." *Id*.

The Eleventh Circuit further explained that "the two factors applied in the Eleventh Circuit are consistent with the Supreme Court's instructions [in *New Hampshire*, 532 U.S. at 749] and provide courts with sufficient flexibility in determining the applicability of the doctrine of judicial estoppel based on the facts of a particular case. We recognize that these two enumerated factors are not inflexible or exhaustive; rather, courts must always give due consideration to all of the circumstances of a particular case when considering the applicability of this doctrine."

The Father's inconsistent positions here clearly meet both factors enumerated by the Eleventh Circuit. First, his inconsistent position was made under oath in the prior Florida state court proceeding. *See*, **Exhibit A**. Second, as explained above, his inconsistencies were calculated to make a mockery of the judicial system by taking completely opposite positions in two related cases to serve his own self-interest.

The Father's own sworn statement in the dissolution of marriage case therefore renders it impossible for him to plausibly plead in this case that the child's habitual residence is anywhere other than Florida, because he judicially estopped from doing so.

As the *Mozes* Court explained, in determining a child's habitual residence, the intention or purpose which has to be taken into account is that of the person or persons entitled to fix the place of the child's residence. In this case, the Mother and Father are the persons entitled to fix the place of the child's residence. According to the Father's own statements under oath, the intention and purpose of both parties was to make Florida the family's residence and as explained above is judicially estopped from pleading otherwise.

In applying the *Ruiz* and *Mozes* analysis to the facts of this case that are before the Court as alleged in the Petition for Return and the Petition for Dissolution, the Court should find that the Petition has not plausibly pled that the child's habitual residence is Germany because the Father is judicially estopped from making such a pleading.

When the Court draws on its judicial experience and common sense and considers the range of possible interpretations of the Mother's alleged conduct, particularly when read in conjunction with the Father's own sworn statements in his Petition for Dissolution that Florida is the family's residence, the court should find that the Father's claim for return of the child to Germany is not plausible on its face, because the Father had admitted and previously pled that the Child's habitual residence is Florida.

The Father merely makes the bald assertions and conclusory statements that Germany is the child's habitual residence and that the Mother is wrongfully retaining the child in Florida, all in contradiction to his own sworn statement in his prior state court pleading. The Father has not and cannot plausibly plead that the child's habitual residence is anything other than Florida. The

Father's Petition for Return must be dismissed for failure to state a claim for which relief can be granted.

## IV. CONCLUSION

For the foregoing reasons, the Respondent respectfully requests that this Court take judicial notice of the Petitioner's Petition for Dissolution and dismiss the Petitioner's Petition for Return of Child to Petitioner with prejudice.

Respectfully Submitted,

/s/Brett Alan Barfield
Brett Alan Barfield, Florida Bar No. 192252
HOLLAND & KNIGHT LLP
701 Brickell Ave.
Suite 3000
Miami, Florida 33131
(305) 374-8500
(305) 789-7799 (fax)
brett.barfield@hklaw.com

/s/Stephen J. Cullen
Stephen J. Cullen, Esquire
*Pro hac vice*
Kelly A. Powers, Esquire
*Pro hac vice*
Miles & Stockbridge P.C.
1801 K Street, N.W.
Suite 421L
Washington, D.C. 20006
(202) 465-8374
(410) 385-3709 (fax)
scullen@milesstockbridge.com
kpowers@milesstockbridge.com

*Attorneys for Respondent*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of March 2012 a copy of the foregoing has been filed electronically and that it is available for viewing and downloading by all counsel of record from the ECF system.

/s/Kelly A. Powers
Kelly A. Powers, Esquire
*Pro hac vice*
Miles & Stockbridge P.C.
1801 K Street, N.W.
Suite 421L
Washington, D.C. 20006
(202) 465-8374
(410) 385-3709 (fax)
kpowers@milesstockbridge.com

*Attorneys for Respondent*